IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

ANTAWN SIMMONS,
*Defendant.*

CRIMINAL No. ELH-20-0451

**MEMORANDUM OPINION**

This Memorandum Opinion resolves two motions filed by the self-represented defendant, Antawn Simmons, in connection with his 84-month sentence for possession of a stolen firearm, in violation of 18 U.S.C. § 922(j).

Defendant has moved for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 77 ("Compassionate Release Motion"). Simmons argues, *inter alia*, that he was diagnosed with Crohn's disease in 2019, and requires an injection every two weeks to treat the condition. *Id.* at 4. According to defendant, "[t]his injection has to be giv[en] on time as directed or his intestines will close up and he would need another surgery." *Id.* Yet, defendant complains that, "a majority of the time," he receives his injection "late." *Id.* Simmons also raises concerns regarding the health of his mother, who is the primary caretaker for defendant's minor daughter, minor grandson, and 36-year-old autistic nephew. *Id.* The Office of the Federal Public Defender ("OFPD") has declined to supplement the Compassionate Release Motion or seek appointment of counsel for defendant. ECF 79.

Defendant has also moved for reduction of sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 80 ("821 Motion"). Simmons contends that his "sentence was based, at least in part," on a

sentencing range that was lowered by Amendment 821. *Id.* at 1. The OFPD has declined to supplement the 821 Motion. ECF 89.

In a consolidated response, the government opposes both motions. ECF 87 ("Opposition"). The Opposition is supported by two exhibits. ECF 87-1; ECF 87-2. The exhibit filed at ECF 87-2 is a copy of defendant's Bureau of Prison ("BOP") medical records. Defendant has not replied. *See* Docket.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall deny the motions.

## I. Factual and Procedural Background

On July 7, 2020, defendant was arrested in a related state case. ECF 63 at 1. He was held without bond until July 21, 2020. *Id.* Defendant was indicted federally on December 10, 2020, and was charged with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g). ECF 1.[1] Simmons was arrested on January 8, 2021 (ECF 11), and released on the same day. *See* ECF 7.

A Superseding Information was filed on July 8, 2022. ECF 54. It charged Simmons with possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). *Id.* On July 19, 2022, defendant pleaded guilty to that offense (ECF 58), pursuant to a plea agreement. ECF 59 ("Plea Agreement"). The Plea Agreement was entered under Fed. R. Crim. P. 11(c)(1)(C) ("C Plea"), by which the parties agreed to a sentence of 84 months of imprisonment. *Id.* ¶ 9.

The Plea Agreement contains the following stipulation of facts, *id.* at 10:

> On July 7, 2020, the Defendant, Antawn Simmons, was driving a black Infiniti sedan in the parking lot of a shopping center in the 5300 back of Frankford Avenue in Baltimore, Maryland. Officers from the Baltimore City Police

---

[1] The Presentence Report states, ECF 63 at 1: "The defendant's related state charges were Nolle Prosequi on January 6, 2021, in favor of federal prosecution."

Department ("BPD") were in a police vehicle and observed the Infiniti as it exited the parking lot. They noted that the Defendant failed to signal as he exited the parking lot, turning left onto Frankford Avenue.

Officers conducted a traffic stop. Upon approaching the vehicle officers smelled a strong odor of unburnt marijuana. An officer was able to see a bag that he recognized through his training and experience to be consistent with the size and shape of illegal drugs packaged for distribution. Officers identified the Defendant and asked him if he had marijuana in the vehicle. He responded that he did, and officers asked him to step out of the vehicle.

Officers began a search and located a digital scale in the center console and then located a loaded Smith & Wesson, model M&P 40, .40 caliber semi-automatic pistol bearing serial number DTC2357 under the driver's seat. The gun was loaded with 15, .40 caliber cartridges, including one in the chamber. Additionally, officers recovered two small, separate baggies of suspected marijuana from the back of the Infiniti, and later a small bag of suspected marijuana from the Defendant's pocket.

The Defendant agrees that he was not the lawful owner of the firearm. The Defendant admits that he knew, or had reason to know, that the firearm was stolen at the time he possessed it; in addition, he admits that he knew the person who gave it to him was not the lawful owner.

The firearm was deemed operable and therefore satisfied the definition of a firearm pursuant to 18 U.S.C. § 921(a)(3)(A) as it will expel a projectile by the action of an explosive. An ATF firearms expert would testify that the firearm and ammunition traveled in and affected interstate commerce.

All events occurred in the District of Maryland.

The Presentence Report ("PSR", ECF 63) determined that defendant had a base offense level of 24, pursuant to U.S.S.G. § 2K2.1(a)(2). *Id.* ¶ 19. Pursuant to U.S.S.G. § 2K2.1(b)(4)(2), two points were added because the offense involved a stolen firearm. *Id.* ¶ 20. However, under U.S.S.G. § 3E1.1, the offense level was decreased by three levels based on Simmons's acceptance of responsibility for his criminal conduct. *Id.* ¶¶ 26, 27. Therefore, defendant had a final offense level of 23. *Id.* ¶ 28.

Defendant's criminal history is lengthy and dates to the age of fifteen. *See id.* ¶ 30. Many of his convictions are drug related. Simmons was convicted in 1998 of possession of marijuana, for which he received one year of probation. *Id.* ¶ 32. In 1999, defendant was sentenced to a suspended term of five years of incarceration, with three years of probation, for the offense of

possession with intent to distribute a controlled dangerous substance ("CDS"). *Id.* ¶ 33. That same year, defendant was convicted of unlawful manufacturing of CDS. *Id.* ¶ 34. He was sentenced to seven years of incarceration, most of which was suspended. *Id.* Defendant also received three years of probation. *Id.*

In 2002, defendant was convicted of second-degree assault and possession of CDS, not marijuana. *Id.* ¶ 35. He received eighteen months of probation. *Id.* Simmons violated his probation and received a 90-day sentence. *Id.*

In 2003, Simmons was again convicted of possession with intent to distribute CDS. *Id.* ¶ 36. The offense occurred in July 2002. *Id.* He was sentenced to ten years' incarceration, with nine years, eleven months, and twenty six days suspended. *Id.* He also received three years of probation. *Id.* Simmons violated his probation in 2004. *Id.* The probation violation stemmed from two other offenses: a CDS distribution offense that occurred in 2003, and for which defendant was convicted in 2004, *see id.* ¶ 38, and an unauthorized use of motor vehicle offense that also occurred in 2003, for which defendant was convicted in 2004. *Id.* ¶ 39. On April 20, 2004, defendant received concurrent sentences of nine years for the CDS distribution offense and the probation violation, and four years for the unauthorized use offense. *See id.* ¶¶ 36, 38, 39; *see also* ECF 64 (Government's Sentencing Memorandum), at 3 ("The longest non-suspended sentence the Defendant has received to date is 9 years for both a Violation of Probation and a felony drug conviction in April 2004."). He was released on parole in all three cases in February 2007. ECF 63, ¶¶ 36, 38, 39.

Defendant was arrested in 2013 for CDS possession. *Id.* ¶ 45. He was fined. *Id.* In 2015, Simmons was charged with possession with intent to distribute cocaine. *Id.* ¶ 46. He was convicted

in January 2016 and sentenced to nine years of incarceration, with six years suspended, and three years of probation. *Id.*

Simmons was also charged in 2012 with unauthorized removal of property. *Id.* ¶ 42. He was convicted that year and sentenced to eighteen months of incarceration, with all but two months suspended, followed by three years of probation. *Id.*

Defendant also has several driving offenses. In 2004, he was found guilty of driving a motor vehicle while his license was suspended and giving a fictitious name to a police officer. *Id.* ¶ 37. A fine was imposed. *Id.* Then, in 2007, defendant was convicted of driving on the highway without a license, for which he received probation before judgment. *Id.* ¶ 40. In 2012, Simmons was sentenced to thirty days' incarceration for "Dirt Bike." *Id.* ¶ 41. Defendant was charged twice in 2013 for driving a vehicle with a suspended license. *Id.* ¶¶ 43, 44. He was sentenced to a combined total of three days of incarceration. *See id.*

The PSR determined that the above offenses resulted in fourteen criminal history points. That equates to a criminal history category of VI. *Id.* ¶ 47.[2] Notably, no status points were added, because defendant was not under a criminal justice sentence at the time of the underlying offense. With a final offense level of 23 and a criminal history category of VI, the Guidelines called for a sentence ranging from 92 months to 115 months. ECF 63, ¶ 87.

Sentencing was held on September 28, 2022. ECF 68. As noted, consistent with the C Plea, the Court sentenced defendant to a below Guidelines sentence of 84 months of incarceration. ECF 69 (Judgment). No appeal was taken. *See* Docket.

---

[2] In the Plea Agreement (ECF 59), the parties agreed that "Defendant's criminal history level is IV." *Id.* ¶ 7. However, both sides subsequently agreed that the PSR correctly calculated defendant's criminal history category as VI. ECF 64 at 2; ECF 65 at 1.

Defendant was permitted to self-surrender on January 9, 2023.  ECF 69.   At defendant's request, the surrender date was extended to February 20, 2023.  ECF 72.

Defendant is now 45 years of age.  *See* ECF 63 at 2.  He is presently incarcerated at FCI Fort Dix in New Jersey.  https://www.bop.gov/inmateloc/ (search by name) (last accessed May 2, 2025).   Defendant has served approximately 27 months of his 84-month sentence, or approximately 32 percent.   He has a projected release date of April 13, 2029. https://www.bop.gov/inmateloc/.

## II.  Legal Standards

### A. Amendment 821

Section 3582(c)(2) of 18 U.S.C. permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 924(o)", if the amendment has been made retroactively applicable, and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*; *see United States v. Barrett*, 133 F.4th 280 (4th Cir. 2025); *United States v. Moore*, 2024 WL 2828103, at *1 (4th Cir. June 4, 2024) (per curiam); *United States v. Riley*, ELH-13-0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range").

The Fourth Circuit has said that district courts must employ a two-step approach in considering 3582(c)(2) motions.  *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016); *United States v. Williams*, 808 F.3d 253, 257 (4th Cir. 2015).  "First, a court must determine the defendant's eligibility.  Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of

imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Peters*, 843 F.3d at 574 (citing § 3582(c)(2)).[3] "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

Amendment 821 to the Guidelines went into effect on November 1, 2023. *Amendment 821*, U.S. Sent'g Comm'n, https://www.ussc.gov/guidelines/amendment/821. It "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024).

Part A of Amendment 821 pertains to criminal history and so called "status points." *Id.* It amended U.S.S.G. § 4A1.1 "by redesignating subsection (d) as subsection (e) and reducing the additional criminal history points assessed to a defendant who committed his offense while under a criminal justice sentence." *Moore*, 2024 WL 2828103, at *1; *see also Barrett*, 133 F.4th at 282-83. "Criminal justice sentence" under the Guidelines includes probation, parole, supervised release, imprisonment, work release or escape status. U.S.S.G. § 4A1.1(e).

Prior to the amendment, under U.S.S.G. § 4A1.1(d), two points were added to a defendant's criminal history score if the defendant committed the underlying offense while under a criminal

---

[3] One policy statement provides that courts may not reduce a sentence "to a term that is less than the minimum of the amended guideline range" unless the defendant's original sentence resulted from a downward departure based upon substantial assistance to government authorities. U.S.S.G. § 1B1.10(b)(2); *see United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (concluding that § 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

justice sentence.  But, as now codified in § 4A1.1(e), Amendment 821 limits the assignment of such "status points."

In particular, Amendment 821 permits the assignment of only one status point, and then only if a defendant has seven or more criminal history points.  *See* U.S.S.G. § 4A1.1(e).  In other words, the amendment eliminates any status points for a defendant who "has six or fewer criminal history points."  *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points.").

"The Sentencing Commission gave retroactive effect to the amended Guideline . . . beginning on February 1, 2024."  *Moore*, 2024 WL 2828103, at *1; *see Barrett*, 133 F.4th at 283.  So, under the new provision, U.S.S.G. § 4A1.1(e), only one "status point" is assessed, and only for those with seven or more criminal history points.

Part B provides for a decrease of two offense levels if ten conditions are met.  *See* U.S.S.G. § 4C1.1(a).  They are, *id.*:

> **(1)** the defendant did not receive any criminal history points from Chapter Four, Part A;
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> **(3)** the defendant did not use violence or credible threats of violence in connection with the offense;
> **(4)** the offense did not result in death or serious bodily injury;
> **(5)** the instant offense of conviction is not a sex offense;
> **(6)** the defendant did not personally cause substantial financial hardship;
> **(7)** the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> **(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> **(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

**(10)** the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

### B. Compassionate Release

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276. In other words, a federal inmate is now able to file a motion for compassionate release directly

with the court, as long as the inmate first exhausts administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step. Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

12

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654

(citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of

the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the

court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added).

Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A).

*Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments

in light of the Sentencing Commission's new policy statement outlining when and how to consider

changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a

defendant files a motion for compassionate release, a court must ensure that any sentence reduction

"is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the
defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of
imprisonment (and may impose a term of supervised release with or without
conditions that does not exceed the unserved portion of the original term of
imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to
the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or
(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30
years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c)
for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the
community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING

REASONS." It identifies multiple circumstances that, individually or in combination, may provide

"extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6).

These include certain medical circumstances of the defendant, such as a terminal illness, "serious

cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[4]

---

[4] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant.  It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence.  That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13(d).  "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  *Id.*  And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow.  The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.  *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when

_____

discretion to reduce a sentence pursuant to the First Step Act."  *Id.* at 500.  However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ."  *Id.* at 486.  "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements."  *Id.* at 495.  It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered

the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see*

17

18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law.").  In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

     *Davis*, 99 F.4th 647, is informative.  The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6).  *Id.* at 654–55.  And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661.

     According to the *Davis* Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.*  The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  It concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

#### A. Amendment 821

Defendant contends that this "sentence was based, at least in part," on a sentencing range that was "amended" by Amendment 821. The government asserts that Amendment 821 does not have the effect of lowering defendant's Guidelines range, because he is "neither a zero-point offender nor a person who received status points that affected his criminal history category during sentencing." ECF 87 at 10.

A review of the record supports the government's assertion. As the government puts it, *id.*: "The 14 points that contributed to Petitioner's criminal history category of VI all derived from his previous convictions." *See* ECF 63, ¶¶ 29–47 (defendant's criminal history). No status points were ever assessed here. *See generally* ECF 63. Therefore, Amendment 821 has no impact on defendant's Guidelines range, and defendant is not eligible for relief pursuant to Amendment 821. *See, e.g.*, *United States v. Gilliam*, JKB-20-0269, 2024 WL 3965589 (D. Md. Aug. 28, 2024).

#### B. Compassionate Release[5]

##### 1. Family Circumstances

Simmons explains that his "63 year old mother, Ms. Janice Simmons[,] is a Breast Cancer Survivor who is in remission[]." ECF 77 at 4. Defendant states that Ms. Simmons "receives monthly medication to fight her pain . . . ." *Id.* According to defendant, Ms. Simmons is "raising" his twelve-year-old daughter, A.S.; his three-year-old grandson, A.M.; and his thirty-six year old autistic nephew, A.B. *Id.* at 4–5. Defendant posits that Ms. Simmons is "doing the best she can"

---

[5] It is not clear from the record whether defendant has satisfied the administrative exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A). Nevertheless, the government has waived the issue by failing to timely raise it. *Muhammad*, 16 F.4th at 129–30 (stating that because the administrative exhaustion requirement is non-jurisdictional, it can be waived if not timely raised by the government).

but is "struggling to take care of herself," the children, and A.B.  *Id.* at 4, 5.  Therefore, "Ms.

Simmons . . . need[s] defendant home to help ease the Load."

The government argues that the scenario described by defendant does not establish an

extraordinary and compelling reason for compassionate release.  ECF 87 at 10.  The government

posits, *id.*: "Not only is Petitioner's mother still able to care for the child, grandchild, and autistic

nephew, Petitioner also proposes assistance and not sole caregiving in the event of release.

Without Petitioner's release, these three dependents would remain in his mother's care; therefore,

Petitioner has not met his burden in establishing family circumstances that are 'extraordinary and

compelling' reasons for a sentence reduction."

U.S.S.G. § 1B1.13(b)(3) states (emphasis added):

(3) Family Circumstances of the Defendant.--

> (A) The death or incapacitation of the caregiver of the defendant's minor child
> or the defendant's child who is 18 years of age or older and incapable of self-
> care because of a mental or physical disability or a medical condition.
> * * *
> (C) The incapacitation of the defendant's parent when the defendant would be
> the only available caregiver for the parent.
> (D) The defendant establishes that circumstances similar to those listed in
> paragraphs (3)(A) through (3)(C) exist involving any other immediate family
> member or an individual whose relationship with the defendant is similar in kind
> to that of an immediate family member, when the defendant would be the only
> available caregiver for such family member or individual.  For purposes of this
> provision, 'immediate family member' refers to any of the individuals listed in
> paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling
> of the defendant.

It appears that Ms. Simmons is the primary caretaker for the two children and A.B.  But,

defendant has not established that Ms. Simmons is incapacitated.  Incapacitation requires more

than a cancer diagnosis.  Fortunately, Ms. Simmons's cancer is in remission.  ECF 77 at 4.

The Court understands defendant's desire to be available for his family.  Nonetheless, I

must construe the words of the Guidelines in accordance with their ordinary meaning.  *See United*

*States v. Boler*, 115 F.4th 316, 323 (4th Cir. 2024); *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021). Therefore, I conclude that defendant has failed to establish an extraordinary and compelling reason for his release grounded in U.S.S.G. § 1B1.13(b)(3)(C).

## 2. Defendant's Medical Condition

Defendant states that he was diagnosed with Crohn's disease in 2019 and "began surgery that same year where Doctors cut out his intestines for a colectomy Surgery." ECF 77 at 4. Although Simmons was "told by Doctors that there is no cur[e] for this disease[,]" defendant receives "a 40mg Humira Injection two times a month for the remainder of his life." *Id.* Defendant states, *id.*: "This injection has to be giv[en] on time as directed or his intestines will close up and he would need another surgery." Yet, according to defendant, he has received the shot "late" for a "majority" of his incarceration. *Id.*[6] Simmons also posits that he "suffers from a number of side effects like, Constant Cramps, Irregular Gas and bowel movements and lower pain [sic]." *Id.*

The government argues, ECF 87 at 9: "Petitioner has not established an extraordinary and compelling basis for compassionate release based on his Crohn's disease diagnosis and treatment." It points out that Simmons was diagnosed before he was incarcerated, and that his BOP records "demonstrate that he receives the Humira injection (or biologic version of the drug) on a regular basis . . . ." *Id.* (citing ECF 87-2). Further, the government posits, ECF 87 at 9: "At no point does Petitioner claim an advanced terminal illness or that he is unable to receive the medical treatment necessary to manage the disease."

---

[6] Defendant reported to begin service of his sentence in February 2023. ECF 72. Simmons filed the Compassionate Release Motion in September 2023, when he was incarcerated at FCI Schuylkill. ECF 77. Defendant was transferred to FCI Fort Dix on November 13, 2023, ECF 87-2 at 134, where he remains today. Therefore, it is not clear if defendant has the same concerns at FCI Fort Dix as he had at FCI Schuylkill. But, the medical records concern both institutions.

In sum, the government contends that Simmons has not established an extraordinary and compelling circumstance because his "BOP medical records demonstrate that [his] condition has been well-monitored by the medical staff at FCI Fort Dix and he is currently receiving treatment that has been shown to be an effective means of managing that condition." *Id.* at 9–10.

U.S.S.G. § 1B1.13(b)(1) is titled "Medical Circumstances of the Defendant." Defendant does not identify any provision(s) that he claims apply to him. But, his circumstances appear to implicate U.S.S.G. §§ 1B1.13(b)(1)(B), (C), which provide that an extraordinary and compelling reason for compassionate release exists if:

> **(B)** The defendant is--
>> **(i)** suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

The BOP medical records for defendant substantiate defendant's claims that he has Crohn's disease and is prescribed bi-weekly Humira injections (or a biosimilar) to treat the condition. *See, e.g.*, ECF 87-2 at 4, 54, 72, 162. Simmons's medical records reflect, *id.* at 75 (italics in original): "Crohn [sic] disease is a long-lasting (*chronic*) disease that affects your gastrointestinal (GI) tract. It often causes irritation and swelling (*inflammation*) in your small intestine and the beginning of your large intestine. . . ." The "main signs and symptoms" of the disease include diarrhea; rectal bleeding; "an urgent need to move your bowels"; the feeling that you are not finished having a bowel movement; abdominal pain or cramping; and constipation. *Id.* at 76. Other signs and symptoms may include fever; nausea; "red bumps on your skin"; unexplained weight loss; and fatigue. *Id.* "Symptoms may come and go." *Id.* Defendant has reported "diarrhea and cramping"

22

and "some rash on his hands and feet . . . ." *Id.* at 103 (June 13, 2024, BOP Clinical Encounter Administrative Note). He has denied fevers or bleeding. *Id.*

There is no known cure for Crohn's disease. ECF 87-2 at 77. Therefore, defendant "is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Accordingly, I shall assume that Crohn's disease qualifies as a "serious medical condition." U.S.S.G. § 1B1.13(b)(1)(B). Nevertheless, defendant has not claimed, let alone established, that his Crohn's disease "substantially diminishes" his ability to "provide self-care within the environment of a correctional facility . . . ." *Id.*

In short, defendant has not established an extraordinary and compelling reason for compassionate release based on his illness, grounded in U.S.S.G. § 1B1.13(b)(1)(B). *See United States v. Naber*, No. CV 04-173 (SDW), 2021 WL 791868, at *3 (D.N.J. Mar. 1, 2021) (defendant was not eligible for compassionate release where he failed to establish "that his claimed gastrointestinal conditions substantially diminish his ability to provide self-care."); *United States v. Rogers*, No. 1:16-CR-00072-NONE, 2020 WL 5440352, at *3, *5 (E.D. Cal. Sept. 10, 2020) (concluding that the defendant had not established an extraordinary and compelling reason for compassionate release, despite "constant cramping," because, *inter alia*, "nothing in the record before the court indicates that defendant is significantly constrained in properly caring for himself due to his Crohn's disease while incarcerated at FCI Mendota."); *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

Moreover, I cannot say that the necessary medical care is "not being provided . . . ." U.S.S.G. § 1B1.13(b)(1)(C). As noted, Simmons complains that he receives his Humira injection "late" a "majority" of the time. ECF 77 at 4. "[U]ndue delays in treating serious medical

conditions may present 'extraordinary and compelling reasons' warranting compassionate release." *United States v. Verasawmi*, No. CR 17-254 (FLW), 2022 WL 2763518, at *7 (D.N.J. July 15, 2022). But, "not all delays warrant such relief." *United States v. Bailey*, No. CR 19-391 (JDB), 2025 WL 1114185, at *8 (D.D.C. Apr. 15, 2025). In considering whether a delay establishes extraordinary and compelling circumstances, "courts consider several factors, including the length of delay, repetition of delays, nature of the delayed treatment, and explanation." *Id.*

A review of defendant's BOP "Medication Administration Record" (ECF 87-2 at 40–49, 139–152), reveals that there have been a number of occasions where defendant missed his Humira injection entirely or there was a delay in its administration. But, BOP's medical records reflect that some of these occurrences were due to defendant's conduct. A BOP Clinical Encounter Administrative note of September 26, 2023, states, *id.* at 1: "Physician contacted because patient failed to attend pill line yesterday for his dose of Humira. Patient has been previously counseled regarding pill line and the requirement that he attend on his assigned date/time. He says it will not happen again, but he really needs his dose." Yet, thereafter, defendant failed to attend the "pill line" on nine separate occasions. *See id.* at 141 (November 15, 2023); *id.* at 146 (April 3, 2024); *id.* at 147 (May 15, 2024); *id.* at 149 (July 31, 2024); *id.* at 150 (August 14, 2024, and August 28, 2024); *id.* at 151 (September 11, 2024, September 18, 2024, and September 25, 2024); *see also id.* at 41 (March 13, 2023); *id.* at 45 (June 19, 2023).

Aside from delayed or missed injections due to defendant's failure to attend the pill line, Simmons's BOP medical records reflect six other instances between February 20, 2023, when defendant self-surrendered, and October 9, 2024, the last date for which the Court has defendant's medical records, when injections were either not provided or were delayed. *See* ECF 87-2 at 36

(injection scheduled for February 23, 2023; received on February 27, 2023); *id.* at 45 (scheduled for June 19, 2023; received on June 20, 2023, "due to the holiday"); *id.* at 49 (scheduled for October 9, 2023; received on October 16, 2023); *id.* at 49 (scheduled for October 30, 2023; received on October 31, 2023); *id.* at 147 (scheduled for May 29, 2024; received on June 12, 2024); *id.* at 149 (scheduled for July 17, 2024; received on July 24, 2024).

Notably, Simmons self-surrendered to FCI Schuylkill on February 20, 2023. *See* ECF 72. He was supposed to receive an injection on February 23, 2023. ECF 87-2 at 36. However, the facility had to order Humira, so defendant did not receive his injection until February 27, 2023. *See id.* Notably, two of the other delays were by only one day. *Id.* at 45, 49.

Thus, the medical records do not support defendant's claim (ECF 77 at 4) that he receives his Humira injection late a "majority" of the time or that the delays are unduly long. To the contrary, the delays have been relatively short in length. *See, e.g.*, ECF 87-2 at 36 (four day delay); *id.* at 45 (one day delay); *id.* at 49 (one week delay); *id.* at 49 (one day delay); *id.* at 147 (two week delay); *id.* at 149 (one week delay).

Of course, for some medical conditions, even a brief delay in treatment can be detrimental to a person's health. For example, a diabetic who needs insulin cannot tolerate an undue delay of his or her medication. For that reason, courts generally consider whether the delay in treatment had a material adverse effect on the defendant. *See, e.g.*, *Bailey*, 2025 WL 1114185, at *9. Where courts have found extraordinary and compelling reasons for compassionate release based on inadequate medical care, the delays in treatment have been serious, consequential, and/or lengthy. *See, e.g.*, *id.* (collecting cases; each involved at least a multi-month delay); *United States v. Smith*, 464 F. Supp. 3d 1009, 1018–19 (N.D. Iowa 2020) (six-month delay in treatment after CT scan indicated that a nodule could be cancerous); *United States v. Beck*, 425 F. Supp. 3d 573, 580–81

(M.D.N.C. 2019) (delay of eight months to take a biopsy and delay of five weeks for follow-up visit allowed cancer to spread). In short, what amounts to an unreasonable delay depends on the nature of and need for the medical care.

Here, there is no indication from defendant's medical records that the delays in treatment have caused adverse effects. There is no foundation for defendant's claim that "his intestines will close up" or that he will "need another surgery" if he receives a late injection. ECF 77 at 4.

More generally, it is clear that the BOP is regularly evaluating defendant's condition and taking steps to rectify any issues that arise. Upon defendant's transfer to FCI Fort Dix, Simmons's medications were "to be continued . . . ." *Id.* at 134.[7] On November 13, 2023, the day after he was transferred, defendant received a "Health Screen." *Id.* at 128–132. Then, on November 20, 2023, he received a physician evaluation. *Id.* at 120. His prescription was renewed, and a gastroenterology consultation request was made. *Id.* at 123–124. Defendant is regularly evaluated by a private gastroenterology specialist. *Id.* at 190–92 (March 15, 2024, report from Gastroenterology Consultants of South Jersey, P.C. ("GCSJ")); *id.* at 182–84 (June 13, 2024, report from GCSJ); *id.* at 174–76 (August 20, 2024, report from GCSJ). And, defendant underwent lab tests in May 2024. *Id.* at 165–173.

On June 13, 2024, defendant reported that he had "diarrhea and cramping" and "some rash on his hands and feet but denies any fever or chills. No bleeding." *Id.* at 103. The note also states, *id.*: "The patient has been switched to a biosimilar and he finds the effectiveness is not as strong as generic Humira." Doctors ordered blood work and developed a plan to resolve the issue. S*ee*

---

[7] Because defendant is no longer housed at FCI Schuylkill, I focus on the treatment Simmons has received at FCI Fort Dix.

*id.* at 103–04.  In particular, doctors ordered that Simmons receive his injection weekly instead of bi-weekly for the next month.  *Id.* at 106.

Defendant was seen again on July 2, 2024.  *Id.* at 99.  He again reported rashes and indicated that they "started after his Crohn's medication was switched."  *Id.*  Defendant was prescribed a cream.  *Id.* at 100.  Dr. Leonard, of GCSJ, saw defendant on August 20, 2024.  *Id.* at 95.  A BOP Clinical Encounter Administrative Note of August 24, 2024, states, *id.* at 88: "[Simmons] is on adalimumab which has worked well for his GI symptoms.  He tolerates the injection every other week.  His main issue has been a rash on his hands and feet.  This has been pruritic.  It did not respond to topical treatment.  Interestingly it seemed to develop when he was switched from Humira to generic adalimumab."  Simmons was continued on adalimumab "for now" and recommended for evaluation by a dermatologist.  *Id.*

In sum, it appears that Simmons is generally receiving adequate medical care.  *See, e.g.*, *United States v. Gadson*, No. 2:19-CR-00122-JAW-2, 2025 WL 1000991, at *23 (D. Me. Apr. 3, 2025) ("Mr. Gadson's perceived delay in receiving his medical care is not an assertion that he did not receive adequate medical care."); *United States v. Young*, No. 4:18CR00017, 2024 WL 1653773, at *2 (W.D. Va. Apr. 17, 2024) ("[A]lthough the evidence indicates that there have been some delays in obtaining medical treatment, it does not indicate that the defendant is being denied treatment . . . .").  As discussed, any delays in treatment have been brief, including two occasions where the delay was by just one day.  Moreover, defendant has missed twelve scheduled injections due to his own failure to appear.

I do not discount that Crohn's disease is a serious medical condition.  But, on the facts here, defendant has not established that his condition constitutes an extraordinary and compelling reason for compassionate release.  *See United States v. Yazzie*, No. CR1108086001PCTMTL, 2022 WL

1081199, at *3 (D. Ariz. Apr. 11, 2022) (Crohn's disease "does not generally meet the extraordinary and compelling standard."); *United States v. Lee*, No. 98-CR-06212-RAR, 2021 WL 1427679, at *4 (S.D. Fla. Apr. 15, 2021) ("[T]his Court and district courts across the country have consistently reached the conclusion that Crohn's disease does not warrant compassionate release."); *United States v. Love*, No. 3:14-CR-0300-B-3, 2021 WL 779074, at *3 (N.D. Tex. Mar. 1, 2021) (no extraordinary and compelling reason for compassionate release where defendant did "not allege that his Crohn's disease is uncontrolled or that he is not receiving proper care to manage it at Butner FCI.").

### C.  18 U.S.C. § 3355(a)

Even assuming defendant has established an extraordinary and compelling reason for compassionate release, that finding would not end the inquiry.  The Court must next consider the sentencing factors in 18 U.S.C. § 3355(a).  These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Defendant's crime was serious.  As the government put it in its sentencing memorandum, ECF 64 at 3: "The Defendant possessed a stolen, loaded firearm.  The Defendant is prohibited from possessing any firearms and his possession alone endangered the safety of himself and the public, as the gun-related acts of violence in Baltimore City continue to soar.  The seriousness of this offense cannot be minimized."

It is not acceptable for an individual to roam the community with a loaded weapon that he is prohibited from possessing.  The crime is even more egregious here, because the firearm was

stolen. Defendant acknowledged the danger in his sentencing memorandum, ECF 65 at 2: "Mr. Simmons has personal experience with the dangers associated with the illegal possession of firearms as he was a victim of gun violence. He understands that there is no excuse for his possession of the firearm in the instant case."

Moreover, upon Simmons's arrest, officers discovered several baggies of marijuana, seemingly "packaged for distribution." ECF 59 at 10. Drugs and guns are a dangerous combination. *See United States v. Blackwell*, JKB-10-493, 2020 WL 833571, at *2 (D. Md. Feb. 19, 2020) ("There is no serious dispute that the illegal drug business brings with it violence, often lethal and on a large scale.").

Defendant's criminal history is also lengthy and disturbing. At the age of fifteen, defendant was adjudicated delinquent with regard to an auto theft. ECF 63, ¶ 30. As an adult, Simmons has been convicted of five felony drug offenses, *id.* ¶¶ 33, 34, 36, 38, 46, and three drug possession offenses. *Id.* ¶¶ 32, 35, 45. He has also been convicted of second-degree assault, *id.* ¶ 35; unauthorized removal of property, *id.* ¶ 42; and several serious driving offenses. *Id.* ¶¶ 37, 39, 40, 43, 44. On the whole, the criminal justice system gave defendant many chances to conform his conduct to societal expectations.

Indeed, a review of defendant's criminal history makes plain that the criminal justice system was generally quite lenient with defendant. Despite Simmons's extensive criminal history, it appears that the longest sentence defendant has served is approximately three years, between 2004 and 2007. *See* ECF 63, ¶ 36. Yet, defendant did not take advantage of that leniency. He continued to engage in criminal activity, which culminated in his federal prosecution in this case. Defendant was approximately 40 years of age at the time he committed the instant offense.

Additionally, defendant's sentence of 84 months of incarceration is in accordance with the terms of the C Plea.  ECF 59, ¶ 9.  That sentence was below the advisory Guidelines range of 92 to 115 months.  *See* ECF 63, ¶ 87.  Moreover, by pleading to the stolen firearm offense, defendant was able to avoid designation as an armed career criminal, with a corresponding mandatory minimum sentence of fifteen years of incarceration.  *See* 18 U.S.C. § 924(e)(1).  In his sentencing memorandum, defendant acknowledged that, "because of his record, the sentence could have been much more significant . . . ."  ECF 65 at 2.

Notably, at the time Simmons filed the Compassionate Release Motion, he had served just over six months of his 84-month sentence, or less than ten percent.  *See* ECF 72 (Order extending self-surrender date to February 20, 2023); ECF 77 (Compassionate Release Motion filed on September 1, 2023).  To date, defendant has served less than one third of his sentence.  A reduction of defendant's sentence at this juncture would not promote respect for the law.  Nor would it specifically deter defendant from continuing to engage in criminal conduct.

Finally, to the extent that the Compassionate Release Motion contains a request for home confinement, ECF 77 at 3, any request for the conversion of a sentence of incarceration to a sentence of home confinement must be submitted to the BOP, and not to this Court.  *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . ."); *United States v. Evins*, No. 4:17-CR-01192-DCC-1, 2023 WL 6926018, at *4 (D.S.C. Oct. 18, 2023) ("The BOP has the sole authority to designate the place of a prisoner's imprisonment . . ."); *United States v. Koth*, No. CR 12-00199 JMS, 2022 WL 344297, at *3 (D. Haw. Feb. 4, 2022) (stating that, pursuant to 18 U.S.C. 3621(b), "it is the BOP—not a federal court—that holds the authority to 'designate the place of the prisoner's imprisonment.'"); *see also United States v.*

*Horton*, ELH-11-547, 2025 WL 240999, at *12–13 (D. Md. Jan. 17, 2025) (discussing the Court's authority to order home confinement).

### IV.  Conclusion

For the foregoing reasons, I shall deny the Compassionate Release Motion (ECF 77) and the 821 Motion (ECF 80).  An Order follows.


Date: May 9, 2025                                               _____/s/_____

                                                                Ellen Lipton Hollander
                                                                United States District Judge